# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CHRISTINE MITCHELL,**

    Plaintiff,

  v.                                                     Case No. 17-CV-518

**NANCY A. BERRYHILL,**
   *Acting Commissioner of the*
   *Social Security Administration,*

    Defendant.

---

## DECISION AND ORDER

---

Christine Mitchell alleges disability based primarily on low-back pain. After the Social Security Administration (SSA) denied her application at the administrative level, Ms. Mitchell sought judicial review in federal court, and the parties subsequently agreed to remand the matter to the Commissioner of the SSA for further proceedings. On remand, Ms. Mitchell received another hearing before an administrative law judge (ALJ). The ALJ again determined that Ms. Mitchell was capable of performing her past relevant work notwithstanding her impairments. Ms. Mitchell now seeks judicial review of that decision.

Ms. Mitchell argues that the ALJ committed errors in assessing her subjective complaints, the side effects from her various medications, and the opinions of the physician assistant who treated her. She seeks an award of benefits or, alternatively, a remand for further proceedings. The Commissioner contends

that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. For the reasons that follow, the Court agrees with the Commissioner and therefore will affirm her decision denying Ms. Mitchell disability benefits.

I.  Background

Christine Lee Mitchell was born on July 10, 1952. Transcript 460, ECF Nos. 9-2–9-17. She and her husband own a home in Greendale, Wisconsin, and they have two adult-aged children and several grandchildren. Tr. 461, 485–87. Ms. Mitchell suffers from chronic low-back pain stemming from degenerative disc and joint disease in her lumbar spine. Tr. 469–70. The pain also radiates down both of her legs. Tr. 475. Ms. Mitchell has treated her pain with a number of medications, radiofrequency ablations, a TENS unit, physical therapy, and facet injections. Tr. 471–79. However, she has never undergone back surgery.

For more than twenty years, Ms. Mitchell worked as a bookkeeper, customer service clerk, and office manager at a company that sold commercial office products. Tr. 464–65. Her job duties included answering phones, helping customers with orders, entering data in computer programs, taking care of complaints from other employees, training employees, and handling performance appraisals. Tr. 466–68. After leaving that position, she worked as an office manager and customer service clerk for two other companies. Tr. 468–70. Ms. Mitchell last worked in 2008. Tr. 492. She believes she was fired from that job due to limitations resulting from her

impairments: she made too many errors, had to get up and walk around quite often, and worked at a slower pace than her colleagues.

Ms. Mitchell applied for disability insurance benefits in Fall 2010, alleging that she became disabled on August 28, 2010. Tr. 168–74. After the SSA denied her application initially, Tr. 70, and upon reconsideration, Tr. 71, Ms. Mitchell requested a hearing before an ALJ, Tr. 109–10. The administrative hearing was held on July 13, 2012, before ALJ Patrick H. Morrison. Tr. 30–69. On August 10, 2012, ALJ Morrison issued a decision finding that Ms. Mitchell was not disabled. Tr. 72–86. The Appeals Council denied Ms. Mitchell's request for review on October 16, 2013, Tr. 515–21, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016). Ms. Mitchell then sought judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). On October 7, 2014, United States District Judge J.P. Stadtmueller issued an order granting the parties' joint motion for remand to the Commissioner pursuant to sentence four of § 405(g). Tr. 525.

Thereafter, the Appeals Council vacated the previous decision and remanded the matter to ALJ Morrison, noting that his decision did not adequately evaluate Ms. Mitchell's credibility in accordance with Social Security Ruling (SSR) 96-7p. Tr. 526–28. The Appeals Council instructed the ALJ to fully consider all of the evidence relating to Ms. Mitchell's back impairment and further evaluate Ms. Mitchell's subjective complaints, paying particular attention to her medication side effects and course of treatment.

The ALJ conducted a second administrative hearing on August 27, 2015. *See* Tr. 455–514. Ms. Mitchell was represented by counsel at the hearing. *See* Tr. 24–27, 455. The ALJ heard testimony from Ms. Mitchell and Spencer Mosley, L.P.C., an impartial vocational expert. *See* Tr. 460–513; *see also* 646–47. Ms. Mitchell testified that her impairments caused difficulty sleeping, walking, standing, and sitting. Tr. 487–89. She further testified that she experienced significant side effects from her medications, including drowsiness, a short attention span, forgetfulness, and difficulty concentrating. Tr. 471–75, 492–99. As a result of her pain, Ms. Mitchell spent about five to six hours each day reclining in a chair and elevating her legs. Tr. 494–95.

The ALJ followed the five-step sequential evaluation process and on September 25, 2015, he issued another decision unfavorable to Ms. Mitchell. Tr. 535–50. The ALJ determined that (1) Ms. Mitchell did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured; (2) Ms. Mitchell suffered from one "severe" impairment: degenerative disc and joint disease of the lumbosacral spine; (3) Ms. Mitchell did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Ms. Mitchell had the residual functional capacity (RFC) to perform sedentary work with certain physical restrictions; and (4) Ms. Mitchell was capable of performing her past relevant work as a customer service clerk, officer manager, and bookkeeper. *See* Tr. 538–45. Based on those findings, the ALJ concluded that Ms. Mitchell was not disabled. Ms.

Mitchell filed exceptions to the ALJ's decision, Tr. 619–23, but the Appeals Council declined to assume jurisdiction of her appeal, Tr. 399–402.

Ms. Mitchell filed this action on April 11, 2017, seeking judicial review of the Commissioner's latest decision under § 405(g). *See* Complaint, ECF No. 1. The matter was reassigned to this Court after the parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 3, 4. It is now fully briefed and ready for disposition. *See* Plaintiff's Brief in Support of Reversal of Social Security's Denial of Christine Mitchell's Claim for Disability Insurance Benefits, ECF No. 11; Defendant's Memorandum in Support of the Commissioner's Decision; ECF No. 15; Plaintiff's Reply Brief in Support of Reversal of Social Security's Denial of Christine Mitchell's Claim for Disability Insurance Benefits, ECF No. 16.

## II. Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

In reviewing the record, courts "may not re-weigh the evidence or substitute [their] judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails

6

to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

## III. Discussion

Ms. Mitchell maintains that she is disabled and that the Commissioner's decision to the contrary is not supported by substantial evidence and is contrary to law and regulation. *See* Compl. ¶¶ 6–7. She asks the Court to reverse the ALJ's decision and award benefits. *See* Compl. p. 2. Alternatively, she seeks remand of the matter to the Commissioner for further proceedings. *See id.*

### A. Legal framework

Under the Social Security Act, a person is "disabled" only if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to her prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has

7

engaged in substantial gainful activity since her alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the Act's regulations as presumptively disabling; (4) whether the claimant's RFC leaves her unable to perform the requirements of her past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four." *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**B. Legal analysis**

Ms. Mitchell argues that the ALJ erroneously failed to credit her subjective complaints concerning the limiting effects of her impairments, include nonexertional limitations in the RFC assessment, and give sufficient weight to the opinions of her treating physician assistant. The Court will address each argument in turn.

### 1. Whether the ALJ erred in evaluating Ms. Mitchell's subjective symptoms

Ms. Mitchell first argues that the ALJ failed to give sufficient weight to her subjective complaints of disabling symptoms. ALJs use a two-step process for evaluating an individual's symptoms. SSR No. 16-3p, 2016 SSR LEXIS 4, at *5–10 (March 16, 2016).[1] First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *9.

An ALJ's evaluation of an individual's subjective allegations "is entitled to deference" and will not be upset unless "it is 'patently wrong,'" *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (quoting *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)), or "divorced from the facts contained in the record," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). "Further, the ALJ must explain [his] decision in such a way that allows [a reviewing court] to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Skarbek*, 390 F.3d at 505; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003)).

---

[1] SSR 16-3p superseded SSR 96-7p on March 16, 2016. Although the ALJ's decision here pre-dates the effective date of SSR 16-3p, the Commissioner does not appear to contest its retroactive application in this case. *See* Def.'s Br. 7.

The ALJ here determined that Ms. Mitchell's subjective symptoms were "not entirely credible." Tr. 542. In reaching this finding, the ALJ summarized Ms. Mitchell's allegations and discussed the objective medical evidence. *See* Tr. 542–43. The ALJ also considered the side effects from Ms. Mitchell's medications and all of the opinion evidence contained in the record. *See* Tr. 542–44. Based on his review of the record, the ALJ concluded that Ms. Mitchell's allegations of disabling pain were exaggerated.

Ms. Mitchell maintains that the ALJ did not build an accurate and logical bridge between the evidence and his adverse subjective-symptom finding. According to Ms. Mitchell, the ALJ "cherry-picked" the objective medical evidence that supported his finding, erroneously discredited Ms. Mitchell's alleged limitations because they were not "medically necessary," misconstrued Ms. Mitchell's statements about why she was not a candidate for surgery, and erroneously rejected Ms. Mitchell's claimed side effects from medications. *See* Pl.'s Br. 8–14; Pl.'s Reply 1–3. For the following reasons, the Court finds Ms. Mitchell's arguments to be unavailing.

**a. Objective medical evidence**

The ALJ did not present only a one-sided view of the objective medical evidence. The ALJ noted Ms. Mitchell's 2008 MRI, which showed disc bulging at multiple levels and an annular tear at L2-L3 but no more than "borderline" spinal stenosis and no herniation. Tr. 542 (citing Tr. 648–49). The bulk of the ALJ's discussion, however, focused on evidence from the relevant time period—that is,

10

between Ms. Mitchell's alleged onset date and her date last insured. *See* Tr. 542–434. This evidence generally showed that Ms. Mitchell had chronic low-back pain but relatively normal findings upon examination and no neurological deficits.

Nearly all of the evidence that Ms. Mitchell claims the ALJ ignored pre-dates her alleged onset date. *See* Pl.'s Br. 9–10 (citing Tr. 279–81, 286–87, 289–90, 292–93, 306). More importantly, the evidence Ms. Mitchell cites does not seriously undermine the ALJ's finding. Ms. Mitchell complained about slightly worsening back pain, and her physical exams showed lumbar tenderness and positive lumbar extension facet loading. But her Oswestry scores suggested only "moderate functional impairment"; she indicated that her side effects from medications were "tolerable"; and her medications were increased only one time—from taking Percocet three times per day to four—following an exacerbation of her symptoms. The allegedly ignored evidence does not show that Ms. Mitchell's back impairment was significantly deteriorating.

Ms. Mitchell's other arguments concerning the objective medical evidence are similarly unavailing. She claims that the ALJ impermissibly "played doctor" when interpreting her 2008 MRI and ignored a CT scan from the same time period that revealed annular tears and degenerative disc disease. The Court disagrees. The ALJ did not interpret any raw medical data in his summary of the MRI, the MRI also revealed the annular tear, and the ALJ correctly noted that the record did not contain any electrodiagnostic studies demonstrating neurological deficits (and as such, there was no indication of nerve root involvement).

11

Furthermore, the state agency medical consultants who reviewed all of the above evidence determined that Ms. Mitchell was still capable of performing at least sedentary work. Ms. Mitchell's argument that the ALJ did not rely on those opinions when assessing her subjective symptoms, *see* Pl.'s Reply 2–3, is simply without merit. *See* Tr. 544 (citing Tr. 310–17, 345–52, 356–57). Accordingly, the ALJ did not, as Ms. Mitchell suggests, utterly fail to acknowledge contrary objective medical evidence.

### b. Ms. Mitchell's activity level

The ALJ reasonably determined that Ms. Mitchell's inactivity level was volitional and contrary to the medical advice she received. Ms. Mitchell testified at the administrative hearing that she spent most of her day resting in a recliner chair with her legs elevated. But her treating providers and pain management specialists consistently encouraged her to modify her lifestyle and become more active. *See* Tr. 543 (citing Tr. 279–307, 321–43, 363–81, 654–96, 697–730). Based on those recommendations, the ALJ reasonably inferred that Ms. Mitchell's symptoms were not as severe as alleged. In other words, Ms. Mitchell's treaters would not have recommended those lifestyle changes if they believed her impairment rendered her unable to engage in such activity.

### c. Candidacy for back surgery

To the extent the ALJ erred in questioning of Ms. Mitchell's explanation for why she was not a candidate for back surgery, such error was harmless. Ms. Mitchell indicated at the hearing that her surgeons advised against back surgery

because she had too many bad discs and surgery would only make matters worse. *See* Tr. 499–502. The ALJ, however, concluded that "the orthopedic surgeon who examined [Ms. Mitchell] in 2010 found insufficient evidence of neurological involvement to recommend surgery." Tr. 543 (citing Tr. 275–78).

Ms. Mitchell correctly points out that the ALJ's conclusion is not supported by the treatment notes he cited. Moreover, other treatment notes do indeed suggest that a "Dr. Frank" advised against surgery, *see* Pl.'s Br. (citing Tr. 752, 757, 763, 767), though his notes apparently are not contained in the record.

Nevertheless, the ALJ's error is not grounds for reversal in this case. The ALJ's questioning of Ms. Mitchell's explanation was merely one reason he offered for not fully crediting her subjective complaints. As discussed elsewhere in this opinion, the ALJ provided other, independently valid reasons for discrediting Ms. Mitchell's allegations of disabling limitations.

### d. Side effects from medications

The ALJ reasonably concluded that Ms. Mitchell's "massively debilitating side effects" could not be as severe as she alleged. *See* Tr. 543–44. Ms. Mitchell indicated at the hearing that her medications caused debilitating side effects, including drowsiness, a short attention span, and forgetfulness. *See* Tr. 471–75. The ALJ determined that these allegations appeared exaggerated given that on multiple occasions Ms. Mitchell took more medication than was prescribed, Ms. Mitchell's providers consistently recommended a more active lifestyle, and Ms. Mitchell's providers never reverted to medications that had less side effects. Tr. 543–44.

13

Ms. Mitchell maintains that the ALJ impermissibly played doctor when he guessed about her treatment providers' actions, the ALJ painted an unclear picture of what he meant by "massively debilitating side effects," and the ALJ misconstrued the record in asserting that she violated her pain agreement on multiple occasions. Again, the Court disagrees. The ALJ did not need any medical expertise to infer that Ms. Mitchell's treatment providers likely would have changed her medication regime if it was causing such severe side effects. Instead, they consistently recommended that she be more active. *See* Tr. 543 (citing Tr. 363–81). Likewise, the ALJ did not err in characterizing Ms. Mitchell's side effects as "massively debilitating" given her testimony that she napped for one to two hours each day due to feeling fatigued or drowsy from her medications. *See* Tr. 488. And the ALJ correctly noted that Ms. Mitchell's pain management specialists described her as having a history of taking more medication than was prescribed. *See* Tr. 543 (citing Tr. 321–43).

Overall, the ALJ provided sufficient reasons for discounting Ms. Mitchell's subjective complaints of disabling symptoms. The ALJ's evaluation of those claimed symptoms therefore was not patently wrong or divorced from the facts contained in the record.

### 2. Whether the ALJ erred in evaluating Ms. Mitchell's RFC

Ms. Mitchell also argues that the ALJ erred in formulating her RFC by not including any nonexertional limitations stemming from her medications. *See* Pl.'s Br. 14–16; Pl.'s Reply 4–5. The ALJ did not, however, need to include such

limitations in the RFC assessment because he reasonably found Ms. Mitchell's complaints about side effects to be exaggerated. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (holding that the ALJ's RFC assessment must incorporate only those limitations that are supported by the medical record). Moreover, Ms. Mitchell told her pain management specialists that her side effects were "tolerable" and controlled with over-the-counter medication, by watching her diet, or by simply "doing nothing." *See* Tr. 279–82, 283–85, 295–97, 327–30, 334–37. The ALJ therefore did not err in in failing to include any such limitations in the RFC assessment.

### 3. Whether the ALJ erred in evaluating the opinions of Ms. Mitchell's physician assistant

Finally, Ms. Mitchell argues that the ALJ failed to give sufficient weight to the opinions offered by her treating physician assistant, Megan Hackel, PA-C. *See* Pl.'s Br. 16–20; Pl.'s Reply 5–6. An ALJ must give "controlling weight" to a treating source's opinion on the nature and severity of the claimant's impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); SSR 96-2p, 1996 SSR LEXIS 9, at *1–9 (July 2, 1996). According to the Act's regulations, a physician assistant is not considered a treating source. *See* 20 C.F.R. § 404.1513; 20 C.F.R. 404.1527; *see also* SSR No. 06-3p, 2006 SSR LEXIS 5, at *3–5 (Jan. 1, 2006) (citing § 404.1527(d)). Thus, an opinion from a physician

assistant can never be entitled to controlling weight. *See* SSR No. 06-3p, 2006 SSR LEXIS 5, at *3–4; SSR 96-2p, 1996 SSR LEXIS 9, at *3–4.

The opinion of a physician assistant, however, remains "important and should be evaluated on key issues such as impairment severity and functional effects." SSR No. 06-3p, 2006 SSR LEXIS 5, at *8. In evaluating opinion evidence from a physician assistant, the ALJ can apply the same factors used to evaluate opinions from an acceptable medical source. *Id.* at *10–11.[2] "Not every factor for weighing opinion evidence will apply in every case." SSR No. 06-3p, 2006 SSR LEXIS 5, at *12. Rather, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow [his] reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *15–16.

Ms. Hackel began treating Ms. Mitchell in April 2008 and saw her every two or three months since then. Tr. 650. On November 30, 2012, Ms. Hackel completed a Lumbosacral Spine Impairment Medical Assessment Form that was solicited by Ms. Mitchell's lawyer. Tr. 650–53. Ms. Hackel noted the following diagnoses: low-back pain, lumbar radiculopathy, lumbar degenerative disc disease, and lumbar disc herniation. According to Ms. Hackel, Ms. Mitchell's chronic low-back pain was

---

[2] These factors include: the examining relationship between the individual and the source; the treatment relationship between the individual and the source (including the length, nature, and extent of the treatment relationship and the frequency of examination); whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; whether the source is a specialist; and any other relevant factors. *See* 20 C.F.R. § 404.1527(c).

16

"moderate to severe." Tr. 650.

Ms. Hackel offered the following opinions concerning Ms. Mitchell's limitations: (1) Ms. Mitchell's impairment and medications caused problems with attention, concentration, pace, or persistence such that she would be "off task" more than thirty percent of the workday and would work at less than fifty percent of the pace of an average worker; (2) Ms. Mitchell could sit for only twenty to thirty minutes at a time and about two hours in an eight-hour workday; (3) Ms. Mitchell could stand or walk for twenty to thirty minutes at a time and less two hours in a workday; (4) Ms. Mitchell would need to take approximately nine unscheduled breaks during each workday; and (5) Ms. Mitchell would be absent from work more than four days per month due to treatment or "bad days" with symptoms. Tr. 651–54.

The ALJ assigned "little weight" to the opinions contained in Ms. Hackel's assessment, reasoning that they appeared to be based solely on Ms. Mitchell's subjective complaints of pain, they were not supported by or consistent with the objective medical evidence, and they were solicited specifically for Ms. Mitchell's disability claim. Tr. 544. Ms. Mitchell claims that these are not "good reasons" for rejecting Ms. Hackel's opinions, but that standard does not apply to opinions offered by a physician assistant. For non-treating sources, like a physician assistant, the ALJ is required only to explain the weight given to such opinions or otherwise ensure that a subsequent reviewer can trace his reasoning. *See* SSR No. 06-3p, 2006 SSR LEXIS 5, at \*15–16.

While the Court may not agree with each reason the ALJ provided for giving little weight to Ms. Hackel's opinions, it finds that the ALJ sufficiently discharged his minimal obligation under SSR 06-3p. The ALJ noted a lack of objective medical evidence substantiating Ms. Mitchell's complaints and negative findings upon medical examinations. *See* Tr. 544. He did not ignore objective signs that suggested disabling symptoms. Consequently, the ALJ reasonably determined that Ms. Hackel overly relied on Ms. Mitchell's subjective complaints, as the medical evidence—including Ms. Hackel's own treatment records, *see, e.g.*, Tr. 279–300, 331–37—did not support such work-preclusive limitations. And, as discussed above, the ALJ sufficiently explained why those subjective complaints were not entirely credible. Accordingly, the ALJ did not err in weighing Ms. Hackel's opinions.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ did not commit reversible error in finding that Ms. Mitchell was not disabled as of August 2010. The Court therefore will affirm the ALJ's decision denying Ms. Mitchell's claim for disability benefits.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge